UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

JANICE E. VENTURA

PLAINTIFF

v.                                                        CIVIL ACTION NO. 3:05CV-552-S

KIMBERLY A. KELSO, BARBARA LEE                            DEFENDANTS
ADKINS, RAMONA SUE ROCHELLE,
DONALD JOSEPH GEINER, and
SAFE AUTO INSURANCE COMPANY

## MEMORANDUM OPINION

This matter is before the court on the motion to dismiss by the defendants, Kimberly A. Kelso, Barbara Lee Adkins, Ramona Sue Rochelle, Donald Joseph Geiner, and Safe Auto Insurance Company ("Safe Auto" or "defendants").  This case involves the plaintiff's common law and statutory claims alleging bad faith in the settlement of claims for personal injuries arising from a motor vehicle accident. For the reasons set forth below, the court will grant the defendants' motion to dismiss on all claims.

## FACTS

On January 29, 2002, January Broughton, who was driving an automobile insured by Safe Auto, hit plaintiff, Janice Ventura's ("Ventura") parked Lincoln Towncar, causing the Towncar to strike Ventura's mobile home.  Ventura, who was seated inside her home, allegedly suffered neck and back injuries from the impact.

Safe Auto initially assigned defendant, Barbara Adkins, to act as adjuster for both the liability claims and the basic reparations benefits ("BRB") claims under Broughton's policy. Safe Auto subsequently divided the adjustment between defendant, Ramona Sue Rochelle, who covered the BRB claims and defendant, Donald Joseph Geiner, who covered the liability claims.   On February 28, 2004, Geiner informed Ventura that Safe Auto would not make an offer on her claim because they believed her medical treatments stemmed from a preexisting condition. Safe Auto then submitted Ventura's medical records for peer review.  The resulting report confirmed, according to Safe Auto, that her injuries were not related to the January 2002 accident.

Ventura then filed suit against Safe Auto, the individual employees named above, and Broughton.[1]  Subsequently, the parties reached a settlement agreement with Safe Auto satisfying the BRB claims and paying an additional $25,000, which was equal to the policy limit on the liability claims.  However, Ventura has continued to pursue the bad faith claims, which are the subject of the instant motion.

<u>DISCUSSION</u>

Safe Auto has made a motion to dismiss pursuant to Fed.R.Civ.P. 12.  In evaluating this motion, we must take the allegations of the complaint as true and grant dismissal only when it is beyond doubt that the plaintiff can prove no set of facts entitling her to relief.  *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

As grounds for its motion to dismiss, Safe Auto maintains that Ventura did not have a valid contractual claim against Safe Auto, and consequently, that she cannot recover on an

---

[1] All claims against Broughton have been dismissed as settled.  *See* DN 1, Agreed Order of Partial Dismissal entered by the Jefferson Circuit Court on 09/08/05.

extracontractual claim such as bad faith.   In support of this proposition, Safe Auto cites *Kentucky Nat'l Ins. Co. v. Shaffer*, 155 S.W.3d 738 (2005), where the defendant insurance company discovered, subsequent to the commencement of trial, that the plaintiff's claim was actually not covered by the policy. Despite the fact that the insurance company had made settlement offers and provided legal representation at trial, the Kentucky Court of Appeals dismissed the plaintiff's subsequent bad faith claim.  The *Shaffer* court held that "in the absence of a contractual obligation in an insurance policy for coverage, there can be no claim for bad faith." *Id*. at 742.  It follows that, even though Safe Auto paid Ventura's BRB claims, her bad faith claims must fail if Safe Auto was not actually responsible for the BRB payments. Accordingly, we must evaluate the merits of Ventura's BRB claim.

KRS 304.39-020(2) characterizes "basic reparation benefits" as those "providing reimbursement for net loss suffered through injury arising out of the operation, maintenance, or use of a motor vehicle, subject, where applicable, to the limits, deductibles, exclusions, disqualifications, and other conditions provided in this subtitle." KRS 304.39.050(1) identifies the class of persons entitled to these benefits. "The basic reparation insurance applicable to bodily injury to which this subtitle applies is . . ., if the injured person is a pedestrian, the security covering the vehicle which struck such pedestrian . . ."  Ventura claims that she was a pedestrian struck by Broughton's vehicle and that Safe Auto, as Broughton's insurer, is responsible for her BRB payments.  Safe Auto maintains, first, that Ventura was not a pedestrian and, second, that Broughton's car did not strike Ventura.

I.

KRS 304.39-050(1) defines pedestrian as "any person who is not making 'use of a motor vehicle' at the time his injury occurs."  Safe Auto does not argue that Ventura was making use of a motor vehicle, as defined by the relevant Kentucky statutes; rather, it contends that Ventura was not in the class of persons the Kentucky General Assembly intended to protect when it used the word "pedestrian."  Safe Auto cites *Kentucky Farm Bureau Mut. Ins. Co. v. Mason*, 600 S.W.2d 483 (Ky. App. 1980) to support this contention.  The *Mason* court noted that an "accepted definition of pedestrian is one who goes on foot, a walker."  *Id.* at 484.  The court then explained that "[b]y defining pedestrian as one who is not the operator of a motor vehicle,[2] the General Assembly was making a distinction between one who travels by walking and one who travels by the operation of a vehicle."  *Id.*  Safe Auto urges the court to confine pedestrians to those people who are traveling rather than to recognize it as a default category for all persons not making use of a motor vehicle.

We decline Safe Auto's invitation to refer to the ordinary meaning and to evaluate Kentucky case law in an effort to ascertain the legislative intent.  We need look no further than the language of the statute itself.  *See, e.g., Howard v. Hicks*, 737 S.W.2d 711, 712 (Ky. App. 1987) (noting that "[w]e are obligated to give the words of a statute their literal meaning unless to do so would lead to an absurd or wholly unreasonable conclusion").  The General Assembly defined pedestrians as "any person not making use of a motor vehicle." The definition is clear and Safe Auto does not

---

[2] A previous version of the statute defined pedestrian as "one who is not the operator of a motor vehicle."  The legislature has since amended the definition to "one who is not making use of a motor vehicle." The *Mason* court determined that the amended language evidenced the "intent that a pedestrian should not cease to be a pedestrian merely because of some connection with a vehicle which does not involve actual use of the vehicle as a vehicle." *Mason*, 600 S.W.2d at 484. For purposes of the present inquiry, however, the change is of no consequence.  Ventura was in her home at the time the accident occurred; she was neither an operator of a motor vehicle nor was she making use of a motor vehicle.

dispute that she was "not making use of a motor vehicle." Ventura falls squarely within the definition provided by the General Assembly. This result is not "absurd or wholly unreasonable." On the contrary, it serves the purpose of the Motor Vehicle Reparations Act ("MVRA"); namely "to provide prompt payment to victims of motor vehicle accidents." *Howard,* 737 S.W.2d at 712-13.

II.

Safe Auto also argues, however, that it was not liable for the BRB payments because Ventura was not "struck" by the vehicle which it insured. KRS 304.39-050(1) provides that the insurer of "the vehicle which struck the pedestrian" will provide the basic reparations benefits. The Kentucky Court of Appeals has held "that the vehicle which actually comes into physical contact with a pedestrian is primarily liable for basic reparations benefits." *State Farm Mutual Automobile Ins. Co. v. Kentucky Farm Bureau Mutual Ins. Co.,* 671 S.W.2d 258, 260 (Ky. App. 1984). In *State Farm,* a man was killed in an automobile accident. At the time he was struck, the man was standing in front of his stalled vehicle, attempting to connect his vehicle to his son's vehicle which was stopped in front of his own vehicle. Another driver struck the rear of the decedent's vehicle, forcing it into his son's vehicle and pinning the decedent between the two. The Kentucky Court of Appeals ruled that the decedent's vehicle was actually the one which "struck" him, causing his death. Therefore, the decedent's insurance carrier was responsible for the BRB payments.

In the case at bar, Broughton's vehicle struck Ventura's vehicle which then struck Ventura's home. Ventura, who was inside her home at the time, was allegedly injured by that impact. Applying the Kentucky Court of Appeals' reasoning, we must find that the car which "actually came

5

into physical contact" with Ventura's home was her own vehicle.[3] Thus, the insurer properly responsible for the BRB payments was Ventura's carrier.

As discussed above, absent a contractual obligation to pay Ventura's claim, she cannot maintain a bad faith cause of action.[4]  *See e.g., Davidson v. American Freightways, Inc.*, 25 S.W.3d 94, 100 (Ky. 2000) (explaining that the first necessary element of a valid cause of action for bad faith is that "*the insurer must be obligated to pay the claim under the terms of the policy*") (citations omitted and emphasis in original).  Consequently, Ventura's bad faith claims against Safe Auto and its individual adjusters must fail.

For the reasons set forth above, the court will grant the defendants' motion to dismiss all claims in this case.  A separate order will be entered herein this date in accordance with this opinion.

---

[3] Safe Auto also contends that Ventura was not "struck" by any motor vehicle because the vehicle hit her home, as opposed to her person.  We need not address this contention because, even assuming *arguendo* that indirect contact is sufficient to establish that Ventura was "struck," Broughton's vehicle was not the one that "struck" Ventura.

[4] Ventura maintains that her bad faith claims relate to the handling of her liability claim as well as her BRB claim. A review of her complaint, however, demonstrates that the allegations of bad faith are made within the context of her BRB claim.